**UNITED STATES of America, Plaintiff,**

v.

**Robert Ray COURTNEY, Defendant.**

**No. 01–00253–01–CR–ODS.**

United States District Court,
W.D. Missouri,
Western Division.

Dec. 5, 2002.

### ORDER SPECIFYING REASONS FOR UPWARD DEPARTURE

SMITH, District Judge.

Earlier today, the Court sentenced Defendant Robert Ray Courtney to a term of imprisonment of 360 months. In so doing, the Court declared that it was departing upward from the Sentencing Guidelines by adding three levels to Defendant's Total Offense Level. The Court identified four grounds that independently justified a three level increase and a fifth that the Court expressly refrained from ruling on. This Order further details the Court's reasoning with respect to the four grounds for departure.

First, for purposes of the grouping rules, Counts One through Eight were treated as separate units for purposes of the grouping rules contained in section 3D1.4. Despite the presence of eight such distinct groups, only five levels could be added to the offense level. Moreover, Counts 9 through 20 were grouped together and had no impact in the guideline calculation because the offense level on those counts was eleven levels lower than offense level for Counts 1 through 8.

The background to section 3D1.4 states that "[i]nasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 units." Elsewhere, the Background also indicates that in unusual cases disregarded counts may justify an upward departure. The possibility for a departure on these grounds was recognized by the Eighth Circuit in *United States v. Brown*, 287 F.3d 684 (8th Cir.2002). In affirming the district court's decision to depart upward based on section 3D1.4's background statement, the court of appeals noted that the guideline "entirely withdrew from the combined offense level computation" three separate counts of criminal conduct while the evidence indicated that the conduct occurred on different occasions. Here, section 3D1.4 totally disregards the same number of crimes as in *Brown*—Counts 6 through 8—that involved different victims and were committed at distinct times. In addition, section 3D1.4 totally disregards Counts 9 through 20, which involved Defendant's provision of adulterated and misbranded drugs for fictitious patients during a sting conducted in the course of the Government's investigation.

■ The Court is mindful that Defendant's adjusted offense level already includes an enhancement under section 3A1.1(b) because there were a large number of vulnerable victims, but an additional increase remains justified. First, the Defendant did not simply commit a single crime that had many vulnerable victims; he committed multiple crimes—most of which targeted a distinct, unique victim. The Defendant is not in the same situation as one who concocts a fraud scheme to which many people fall prey; he consciously decided, on multiple occasions, to commit an additional crime, knowing that each time he did so another patient was victimized. In addition, most of the patients covered by the Indictment were victimized on multiple occasions. Thus, while his crimes targeted many vulnerable victims, the manner in which he created his victims is singular and unusual, and is not fully contemplated by the enhancement for multiple victims. It is appropriate, as suggested by the Background Notes to section 3D1.4, to depart in situations where there is inadequate scope to insure appropriate additional punishment for the additional crimes Defendant committed.

■ Second, the Court holds that an upward departure is warranted by virtue of section 5K2.14 because the defendant significantly endangered public health. Defendant has, on 160 different occasions, deprived 34 different people of potentially life-saving or life-prolonging medication, specifically Taxol and Gemzar. Defendant has also admitted to diluting and tampering with other medication (Platinol and Paraplatin), affecting an unspecified number of patients. Finally, Defendant has admitted to selling black market drugs to an unspecified number of consumers. The Court concedes that the very nature of Defendant's crimes implicates public health to a certain degree, but Defendant's crimes have done so to a degree that could not have been anticipated by the Sentencing Commission.

■ Third, Defendant's conduct posed a unique and substantial risk of psychological injury. There are several guidelines that contemplate these circumstances as justifying an upward departure; the Court will rely on section 2N1.1, Application Note 1, which declares that "[w]here the offense posed a substantial risk of death or serious bodily injury to numerous victims, or caused extreme psychological injury or substantial property damage or monetary loss, an upward departure may be warranted." The Court acknowledges that a four level enhancement was imposed under section 2N1.1(b)(1)(A) because victims sustained permanent or life-threatening *bodily* injuries, but the Application Note considers a circumstance not contemplated by the enhancement; namely, extreme *psychological* injury. Cancer patients understandably suffer from a high degree of anxiety and stress as their lives hang in the balance. Often, their sole hope for survival—not necessarily recovery, but mere survival—depends upon these drugs.

The hope is an uncertain one, as there is often no guarantee whether or to what extent the drugs will prove effective in a given case. Early treatment is, as is the case with many diseases, instrumental in determining the ultimate success—and now these patients have learned that they effectively had no treatment whatsoever. Their anxiety and stress has been compounded to a degree beyond any possible comprehension: those still living face not only the uncertainty presented by their illness, but the uncertainty as to "what might have been" had Defendant not engaged in criminal conduct—whether they might feel better or live longer, or whether their prognosis would be better had they received the intended medication.

Defendant has relied in part on *United States v. Terry,* 142 F.3d 702 (4th Cir.1998) in objecting to this ground for departure. *Terry* recognized that the universe of victims includes indirect victims, but held that to be an indirect victim a person had to have a connection to the offense, not merely to a direct victim. Thus, a bank teller on duty at the time of a bank robbery would be an indirect victim, but a family member of one killed by a drunk driver would not be—unless the family member happened to be involved in or witnessed the incident. 142 F.3d at 711–12 n. 17.[1] Assuming that *Terry* is the law of the Circuit, and assuming that the family members in this case are closer to the family members involved in that case (as opposed to the hypothetical described in footnote 17 of that opinion), the record reflects the feelings of and psychological effects upon those receiving Taxol and Gemzar from Defendant. Moreover, Defendant does not seriously dispute that those surviving past the public disclosure of his crimes (including those that unfortu-

---

1. *Terry* involved application of section 5K2.3 of the guidelines, but the language in this section is very similar to that contained in the Application Note relied on by the Court.

nately passed away between that time and today) felt the despair and anguish over the Court described earlier.

 Fourth, section 5K2.21 justifies an upward departure. Section 5K2.21 permits a sentence beyond the guideline range to account for uncharged criminal conduct that did not enter into the guideline calculation. As indicated earlier, Defendant admits to having diluted and tampered with other drugs, specifically Platinol and Paraplatin, and to selling black market drugs to consumers. Defendant has also admitted to subjecting 26 additional cancer patients to the same conduct that forms the basis for counts one through eight. In other words, Defendant could have been charged with at least 34 counts of product tampering for providing subpotent Taxol and Gemzar— not just eight counts—as well as charges for selling subpotent Platinol and Paraplatin and black market drugs.

In this regard, Defendant again points to the fact that his sentence was adjusted for the large number of vulnerable victims pursuant to section 3A1.1(b)(2), but this contention misses the point. The enhancement for the large number of vulnerable victims does not apply to the uncharged conduct, and the uncharged conduct played no part in supporting this enhancement.

Any one of these four factors justifies an upward departure, and the Court concludes that a departure is warranted. The circumstances described above were not adequately taken into account by the Sentencing Commission when the Guidelines were formulated. Some of the circumstances were considered, but not to the degree present in this case. In accordance with the general Policy Statement contained in section 5K2.0, and for the reasons stated earlier, each ground for departure identified above justifies an upward

departure of at three levels, resulting in a sentencing range of 292 to 365 months.

IT IS SO ORDERED.